IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 3:26-CR-548-B |
| JAMEL ALLEN SMALL (09) | |

**DEFENDANT JAMEL ALLEN SMALL'S RESPONSE TO GOVERNMENT'S MOTION FOR ALTERNATIVE VICTIM NOTIFICATION**

Defendant Jamel Allen Small submits this response to the government's Motion for Alternative Victim Notification (Dkt. 143). Small asks the Court to consider the following when determining whether alternative means of victim notification is necessary or appropriate under the facts of this case and, if so, what sort of disclosure the government should make. In support thereof, Small shows the Court as follows:

1. Under 18 U.S.C. § 3771(d)(2), if the Court finds "that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a)," then the "court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings." This Court retains authority to determine "the specific procedures" used for alternative victim notification. *See United States v. Babich*, 301 F. Supp. 3d 213, 217 (D. Mass. 2017) (approving disclosure on the FBI's and U.S. Attorney's Office's website but rejecting the government request to also include notice on DOJ's website and the government's request for "blast emails" as "too vague"). Courts impose limitations on the government's procedures for notice, recognizing defendants' Sixth Amendment right to an impartial jury and a fair

trial. *Id.* Among other things, courts have held that any press releases and/or notices "shall avoid reciting allegations contained in the pleadings and shall contain language indicating that the defendant is presumed innocent unless and until proven guilty." *Id.* at 217-18 (citing *United States v. Merrill*, Crim. No. 14-40028, 2014 WL 6387368, at *2 (D. Mass. Nov. 14, 2014); *United States v. Saferstein*, No. 07-CR-557, 2008 WL 4925016, at *3-4 (E.D. Pa. Nov. 18, 2008)).

2. The indictment makes three statements regarding the number of victims. *First*, the government describes something called the Morris Spreadsheet, which it alleges contains nearly 3,000 individuals. (Dkt. 1, ¶ 2.) There is no indication where the Morris Spreadsheet came from or the extent to which the government has corroborated the information within it. The government's motion expands somewhat on the Morris Spreadsheet, acknowledging that some "cells are missing relevant victim data" thus making it "impracticable for the government to identify and locate all victims and then provide them with" notice of this case. (Dkt. 143 at 2-3.) *Second*, the indictment contends that defendants and others "used the identities of at least 75 individual victims," tracing those to the "the Morris Spreadsheet and beyond." (Dkt. 1, ¶ 8.) *Third*, the indictment identifies eleven individuals by their initials, noting that each was listed in the Morris Spreadsheet. (Dkt. 1, ¶ 28(a).)

3. If this is a case of eleven victims, or even 75, then notification to those individuals is not "impracticable." *See* 18 U.S.C. § 3771(d)(2); *In re Dean*, 527 F.3d 391, 394-95 (5th Cir. 2008) (finding it not impracticable to notify "fewer than two hundred

victims, all of whom could be easily reached").[1] But the government's motion is premised on this case involving approximately 3,000 victims. (Dkt. 143 at 2.) What is missing from the government's motion is any basis that each name identified on the Morris Spreadsheet is, in fact, a victim. It seems apparent that the government has not contacted each purported victim on the spreadsheet to confirm that each entry reflects a real person. The government admits that the Morris Spreadsheet has partial information as to certain names and there is no indication as to the origins of the Morris Spreadsheet. (Dkt. 143 at 2-3.) To Small's knowledge, this is not a data breach case where some entity was hacked and could corroborate the veracity of any stolen data. The Morris Spreadsheet may be of dubious origins and contain a variety of information that is incomplete or just factually inaccurate.

4. At this stage of the proceeding, defendant Small has not received any discovery and certainly not the Morris Spreadsheet. The agent's testimony at the recent detention hearing confirmed that the government is not aware of any evidence that Small ever possessed it.[2] Without more information, it is hard, if not impossible, to know

---

[1] *Cf. United States v. Bondarenko*, No. 2:17-CR-306, 2018 WL 1413972, at *1 (D. Nev. May 21, 2018) (approving alternative victim notification procedures for notification of approximately 4.3 million victims, which defendants did not oppose); *Babich*, 301 F. Supp. 3d at 217 (approving alternative victim notification procedures when there were thousands of unknown victims); *Merrill*, 2014 WL 6387368, at *1 (approving alternative victim notification procedures for notification of approximately 785,000 victims worldwide); *Saferstein*, 2008 WL 4925016, at *3–4 (approving alternative victim notification procedures for 300,000 victims).

[2] Undersigned counsel has ordered a copy of the transcript from the Detention Hearing (Dkt. 136) and is awaiting its return. Counsel's recollection from the hearing is that the agent testified to this point and it was not challenged by the government.

whether each entry on the spreadsheet reflects a true, real person or whether the Morris Spreadsheet is of dubious origins, filled with data that does not actually identify real persons who were directly and proximately harmed as a result of the charges in the indictment. *See* 18 U.S.C. § 3771(e)(2)(A).

5. Even if this is a case that involves approximately 3,000 victims, it seems that the government wants to provide individualized notice to every person on the Morris Spreadsheet. To that end, the government posits that "[e]ach of the individuals in the Morris Spreadsheet has a right to receive notice of this serious privacy breach . . . so they can take proactive steps to protect themselves and participate in these proceedings to the extent authorized by law." (Dkt. 143 at 4.) But the whole premise behind alternative means of notification is that the government does not give specific notice to specific individuals. Instead, it relies on posting information on public spaces and invites victims to raise their hand, should they believe they are a victim.

6. And therein lies the problem in the government's proposal for alternative victim notification. How is any individual supposed to know whether they are a victim of this alleged criminal conspiracy? How is the government going to know? This is a case in which the government alleges that identities were used to effectuate bank account takeovers so that money could be stolen. (*See generally* Dkt. 1.) It cannot be that anyone who had their identity stolen during the time period of the alleged conspiracy is a putative victim of this case. Nor can it be the case that any person whose identity was stolen and bank account accessed is necessarily a victim of the criminal conspiracy alleged in this

case. The government's motion does not provide answers to these questions. Instead, the government wants to "issue a press release informing individuals who believe they may be victims to access the Justice Department website for more information." (Dkt. 143 at 3.) Nothing in that statement indicates how anyone would know whether they are a victim of this case, or some other data breach, or some other case involving the alleged improper use of personally identifying information.

7. Small does not dispute that certain cases present justifiable circumstances for alternative notification. But what makes those cases appropriate vehicles for alternative notification is that the government had a mechanism to define the class of victims. Although not cited in the government's motion, it provided alternative notice in *United States v. Greenlaw*, No. 4:21-CR-289-O (N.D. Tex.), where it alleged securities fraud in connection with several securities listed on national exchanges. There, the notice provided a specific date range and specific securities to define the putative class of victims.[3] That is similar to cases cited in the government's motion, such as *Skilling* (involving the Enron prosecution), *Ginster* (where the noticed identified a specific time period in which the defendant ran a high-yield investment scheme via a specific website), and *Elbaz* (where the charged scheme involved services connected with two specific websites). The other two cases cited in the government's motion—*Turchin* and *Iarmak*—involved specific cyberbreaches, attacking specific computer systems (in *Turchin*) or

[3] *See* Notice in *United States v. Hollis Morrison Greenlaw et al.* (Case No. 4:21-CR-00289), available at https://www.justice.gov/usao-ndtx/page/file/1472316/dl?inline (last visited Nov. 3, 2026).

specific companies (in *Iarmak*). (Dkt. 143 at 6.)

8. Small asks the Court to consider the foregoing when determining whether alternative means of notification are necessary and appropriate in this case and in directing the government on the appropriate disclosures in any notifications. Among other things, Small asks that the government be directed to provide a copy of any description of the case or charges to the Court and the parties in advance of publication, should the Court determine that alternative notification procedures are appropriate in this case.

Dated: November 9, 2026

Respectfully submitted,

***/s/ J. Nicholas Bunch***

J. Nicholas Bunch
State Bar No. 24050352
HAYNES AND BOONE, LLP
2801 North Harwood Street, Suite 2300
Dallas, Texas 75201
Tel: (214) 651-5000
Fax: (214) 651-5940

**ATTORNEY FOR DEFENDANT JAMEL ALLEN SMALL**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via email on November 9, 2026.

*/s/ J. Nicholas Bunch*
J. Nicholas Bunch